UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:

AMBER A. SEARS,                                    Case No.: 14-47935-wsd
                                                   Chapter 7
         Debtor.                                   Hon. Walter Shapero
_____/

**OPINION IN CONNECTION WITH DEBTOR'S MOTION FOR ORDER
DETERMINING THAT AUTOMATIC STAY DOES NOT APPLY TO DISTRIBUTION
OF WRONGFUL DEATH PROCEEDS, OR, IN THE ALTERNATIVE, FOR RELIEF
FROM STAY**

**I. BACKGROUND**

A case was commenced in the Wayne County Circuit Court ("State Court Case") by the law firm Olsman, Mueller, Wallace, & MacKenzie P.C. ("Olsman") on behalf of Yvonne Sears, the Personal Representative of the testamentary estate ("Estate") of Richard Sears, deceased. That action was a wrongful death action against a number of defendants, among which was Laurel Park Assisted Living, LLC ("Laurel Park"). The case was arbitrated, resulting initially in the entry of a judgment against Laurel Park ("Judgment") on February 17, 2012. Following that, there were supplementary collection proceedings, entry of an updated or separate Judgment against other parties, and further disputes involving collection of the Judgment. While these matters were ongoing, The Darnell Law Offices ("Darnell") became involved in the collection activity on behalf of the Estate, shortly after which Olsman filed notices of liens on the Judgment for its claimed attorney fees, and advised the parties of other lien claims by Medicare and Blue Cross and Blue Shield.

The collection disputes were settled by way of a written comprehensive Settlement Agreement ("SA") dated February 5, 2014, essentially providing for payment by Laurel Park and

1

others of a total of $180,000.00, of which $50,000.00 was to be paid immediately and the balance in 26 consecutive monthly payments of $5,000.00, commencing March 1, 2014, with all payments being made payable to Darnell's IOLTA account. It also contained default and other provisions including: (1) security for the required payments by way of an escrow with Darnell of an executed form of consent judgment that would be entered in the event of default; (2) dismissal with prejudice of the underlying Judgment; and (3) execution of mutual releases. In 2012, prior to the SA, the Estate had also commenced a fraudulent transfer action, alleging Laurel Park had closed down and transferred its assets to one or more related entity that was not a judgment debtor. The SA itself did not contain any provisions with regard to the disposition by Darnell of the payments made and to be made to it thereunder.

Olsman alleges that, being concerned about protection of its and the other referred to liens on the Judgment and unaware of the SA, soon thereafter, it obtained from the State Court a temporary restraining order enjoining effectuation of the SA. In the subject Motion now before this Court, Olsman alleges that immediately after the SA was signed, but prior to the issuance of that temporary restraining order, (1) Darnell received and distributed to itself and Amber Sears the $50,000.00 initial payment required and made under the SA (Amber Sears is the Debtor in this bankruptcy case, hereinafter "Debtor," and is apparently the sole beneficiary of the Richard Sears Estate); and (2) having learned of that distribution, Olsman also filed a Motion in the State Court on May 2, 2014, seeking to have all of the settlement funds declared to be held in a constructive trust until it can be determined who is entitled to what portion of the funds. That Motion was scheduled to be heard on May 7, 2014. Debtor had filed this bankruptcy case on May 6, 2014. On May 7, 2014, the State

Court in substance granted the constructive trust motion (rejecting an argument by Darnell that doing so would violate the automatic stay).

## II. CURRENT PROCEEDINGS

Olsman filed the subject Motion in this Court seeking a determination that the Judgment and SA proceeds are not, at least yet, property of Debtor's bankruptcy estate and that proceeds will not become part of the bankruptcy estate unless and until the State Court determines exactly who, including Debtor, is entitled to what portion of what has been and will be paid (with the exception of the amounts already paid to Debtor prior to the filing of the bankruptcy). In the alternative, Olsman asks that if the automatic stay is applicable, that it be lifted to enable the State Court to determine entitlement to those monies. The Debtor and Timothy J. Miller, as Trustee for the Bankruptcy Estate ("Trustee") oppose the Motion arguing essentially that the Bankruptcy Court is the proper forum, and indeed the exclusive one in which the Debtor's entitlement to her part of the proceeds which have been or are to be paid should be determined, and, incident to doing so, the Bankruptcy Court can and should also determine the rights of any of the lien or other claimants to such.

Prior to the hearing on the Motion, the parties importantly stipulated to the entry of an Order (Docket No. 54) which provides that (1) all payments under the SA (including any sums then held in Darnell's or any other involved attorney's IOLTA accounts) were to be remitted to the Trustee and held by him, pending further order of this Court; (2) Debtor could retain any of such funds in her possession as of the filing date and allowable as exempt under 11 U.S.C. § 522(d)(5); (3) the Order does not prejudice the rights of Debtor or any parties in interest to the proceeds of the SA; (4) the liens of Olsman and Darnell, if any, continue in such proceeds; and (5) such Order does not prejudice the rights of Olsman in this pending Motion.

It is clear that whatever interests Debtor held upon filing her bankruptcy petition became part of the Bankruptcy Estate pursuant to 11 U.S.C. § 541, which provides a very broad definition that, given the indicated facts, would encompass her interests in her capacity as a (or the sole) beneficiary of the Estate of Richard Sears (the judgment creditor), as a potential beneficiary under the Michigan Wrongful Death Statute or under the terms of the SA, and/or as the beneficiary of other rights, property, or causes of action. The fact that the exact identification and quantification of those interests has yet to be determined does not preclude them from being and becoming property of the Debtor, and thus, of her Bankruptcy Estate, to be administered as such under the Bankruptcy Code. The more important question in this case, and that to which the pending Motion is alternatively addressed, is in which forum will the identification, quantification, and determination of those rights or interests occur.

On the one hand, we have (1) substantial State Court proceedings having taken place prior to and pending at the time of the bankruptcy filing; (2) the SA preceding that filing, entered into between the State Court parties contemplating a State Court determination of the rights to the monies involved; (3) various pre-bankruptcy filings of claimed liens on the monies involved filed by non-bankruptcy parties; and (4) entitlement to the monies as between Debtor and others, all of which will be determined by and under state law. On the other hand, presently and ongoing there will be funds (which by prior order are and will be collected by the Trustee) that are property of the Bankruptcy Estate, the ultimate entitlement to which, considering claimed exemptions, claims against the Debtor and the Bankruptcy Estate, administrative fees, etc., will be determined and administered by the Bankruptcy Court pursuant to the Bankruptcy Code. When distilled out in the indicated manner, the

foregoing do not essentially conflict and for purposes of the Motion may be seen as mutually exclusive, complementary, and capable of being effectively dealt with accordingly.

Motions to Lift Stay are to be granted for "cause." Cause has been held to include granting relief when necessary to be concluded in another forum in the interests of judicial economy and particularly in situations where there are already pending state court proceedings which involve and affect not only the debtor but also non-bankruptcy case involved parties and where issues of state law are predominant. As was stated in *Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir. 1987):

> " 'Because there is no clear definition of what constitutes "cause," discretionary relief from the stay must be determined on a case by case basis.' " *In re Castlerock Properties*, [781 F.2d 159, 163 (9th Cir. 1986)] (quoting *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985)). The district court in the present case lifted the stay because there was a Texas state court proceeding pending which dealt with the same issues, and because the issues involved were matters of state law best decided by the state courts.

The Trustee argues in support of his objection that neither he nor the Bankruptcy Estate creditors have standing in the State Court action to protect their interests against the Estate. As to the Bankruptcy Estate, its creditors have standing in the Bankruptcy Court to pursue their claims and that is sufficient to protect them. Section 541(a) merely defines what interests of a debtor in bankruptcy becomes property of the bankruptcy estate (in this case, the Debtor's entitlement to some portion of the subject monies as a beneficiary of the Richard Sears Estate arising out of that testator's death prior to the bankruptcy filing, and incident thereto the Judgment and SA) and non-bankruptcy law defines the existence and scope of that interest. The Trustee stands in the shoes of the Debtor and has the exclusive right to bring the Debtor's claims. *In re Cannon*, 277 F.3d 838, 853 (6th Cir. 2002). It does little violence to the jurisdiction of the Bankruptcy Court and the Trustee's bankruptcy obligations where, as here, all of the contended for monies are and stay in the possession

5

of the Trustee pending the State Court's determination of exactly which portion thereof will in fact be administered by the Trustee, and particularly where, as here, (a) the primary party to the State Court proceedings determining exactly how much of the collected funds will be administered as property of the Bankruptcy Estate is a fiduciary with legal obligations to maximize entitlement to such for the primary benefit of the Debtor (and thus the Bankruptcy Estate) and the Estate of which she is a beneficiary; and (b) if the Trustee becomes concerned about the performance of those obligations, as clearly this Court believes would be his concern as a party in interest, he can seek to become involved in that State Court proceeding just the same as the Debtor might have been able to, had she not filed bankruptcy. Neither the fact that some portion of those funds will obviously become property of the Bankruptcy Estate, nor the Trustee's ongoing receipt and possession of the contended for funds mandates adjudication by the Bankruptcy Court of what portions of the funds will be administered by it. Rather, the choice of forum in this kind of situation depends on what comes within the purview of what constitutes "cause" to lift stay under the statute. In the Court's view and on balance, that is clearly preferable to having the Trustee, for instance, file an adversary proceeding in the Bankruptcy Court against all the various parties in interest (i.e., those who are parties to the State Court proceeding and SA, the lien claimants, etc.).

### III. <u>CONCLUSION</u>

In sum, therefore, the Court concludes that cause exists to grant the alternatively requested relief from the automatic stay, and the appropriate order to be presented by Olsman should: (1) include provisions to effectively continue the provisions of this Court's Order For Turnover of Settlement Proceeds (Docket No. 54) until further order of this Court; (2) require Olsman to periodically advise the Trustee and Debtor as to the status of the State Court proceedings and

6

promptly supply them with copies of all pleadings and any orders therein; (3) state that this Court's order is without prejudice to whatever rights the Trustee may have to participate in the State Court proceedings; and (4) state that this ruling affords adequate protection to the Trustee in this bankruptcy matter and, should there be a change in circumstances, is without prejudice to his requesting other relief or more or different adequate protection in this Court.

**Signed on September 08, 2014**

                                            **/s/ Walter Shapero**
                                            **Walter Shapero**
                                            **United States Bankruptcy Judge**